IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DUNG NGUYEN and LINH NGUYEN, | ) ) ) |
| Plaintiffs, | ) ) |
| -vs- | ) ) ) |
| MARY ALICE STROUD PATEK, JOHN PATEK, and GARRICK J. STROUD, | ) ) ) ) ) |
| Defendants. | ) |

COMPLAINT

(Count I--42 U.S.C. §1982)

NOW COME the Plaintiffs, DUNG NGUYEN and LINH NGUYEN, by and through their attorney, JOANIE RAE WIMMER, and, complaining of the Defendants, MARY ALICE STROUD PATEK, JOHN PATEK, and GARRICK J. STROUD, allege and state as follows:

1. The Plaintiffs, DUNG NGUYEN and LINH NGUYEN, have brought this action to redress the violation of their rights under 42 U.S.C. §1982.

2. Jurisdiction over this action has been conferred upon this Court under 28 U.S.C. §1331 (federal question).

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because all Defendants reside in the State of Illinois and at least one of the Defendants resides in the Northern District of Illinois, and because all of the events and omissions giving rise to this claim occurred in the Northern District

of Illinois.

    4.  Plaintiff DUNG NGUYEN is an individual who is a naturalized United States citizen who was born in Vietnam and is of the Asian race.

    5.  Plaintiff LINH NGUYEN is an individual who is a naturalized United States citizen who was born in Vietnam and is of the Asian race.

    6.  Plaintiffs DUNG NGUYEN and LINH NGUYEN are brother and sister.

    7.  In and around 1999 Plaintiffs DUNG NGUYEN and LINH NGUYEN purchased a single family residence in Countryside, Illinois, which is commonly known as 5433 South Eighth Avenue, Countryside, Illinois 60525 (hereinafter referred to as "the Nguyen residence").  (The real property on which the Nguyen residence is located will be referred to hereinafter as "the Nguyen property".) Since the Plaintiffs purchased said residence, they have resided there with the Plaintiffs' mother, Sen Vo, the Plaintiffs' sister, My Dung Nguyen, and My Dung Nguyen's daughter, Lisa Nguyen.

    8.  Defendant MARY ALICE STROUD PATEK is an individual of the Caucasian race.

    9.  Defendant JOHN PATEK is an individual of the Caucasian race.

    10.  Defendant GARRICK J. STROUD is an individual of the Caucasian race.

    11.  Defendants MARY ALICE STROUD PATEK and JOHN PATEK are wife and husband.

    12.  Defendant GARRICK J. STROUD is the son of Defendant MARY ALICE STROUD PATEK.

13. Defendants MARY ALICE STROUD PATEK, JOHN PATEK, and GARRICK J. PATEK, reside in a single family residence at 5431 South Eighth Avenue, Countryside, Illinois 60525 (hereinafter referred to as "the Patek residence"). (The real property on which the Patek residence is located will be referred to hereinafter as "the Patek property".)

14. The Nguyen residence and the Patek residence are next door to each other.

15. The Defendants, and each of them, have embarked on a course of action of harassing the Plaintiffs, and each of them, and others who reside in the Nguyen residence, with the goal of intimidating them in the use or occupancy of their property on account of their race.

16. Said course of action includes, but is not limited to, those actions described in the paragraphs below.

17. On or about March 3, 2012, Plaintiff LINH NGUYEN noticed that one of her metal "Private Property" signs on the Nguyen property had been broken. She reviewed a video and saw that the night before Defendant GARRICK J. STROUD had arrived home in the early morning hours with an unknown individual. The video showed that Defendant GARRICK J. STROUD pointed toward the "Private Property" sign and the unknown individual then broke it.

18. On or about July 14, 2012, Plaintiffs DUNG NGUYEN and LINH NGUYEN were outside their residence fixing a video camera attached to their house. Defendant JOHN PATEK approached the Plaintiffs and said, "What the hell are you doing?" Plaintiff DUNG NGUYEN responded, "None of your

business." Defendant JOHN PATEK then yelled at the Plaintiffs, "I'll fuck your ass up." Defendant JOHN PATEK then challenged Plaintiff DUNG NGUYEN to a fight. The Plaintiffs then went inside their house and called the police. The police responded, interviewed the parties, and told them to stay away from each other.

19. On or about July 28, 2012, Plaintiff LINH NGUYEN was in her side yard working on the Nguyen's garden. While she was working, Defendant JOHN PATEK yelled "Fuck you" at Plaintiff LINH NGUYEN repeatedly and angrily stared at her. Plaintiff LINH NGUYEN then turned on the car stereo in her car in the Nguyen driveway. Plaintiff JOHN PATEK then called the police and complained about the loud car stereo. Plaintiff LINH NGUYEN was questioned by the police. She agreed to turn off the car stereo. When the police were on the scene, Defendant JOHN PATEK continued to stare in an intimidating and angry way at Plaintiff LINH NGUYEN. The police suggested to both Plaintiff LINH NGUYEN and Defendant JOHN PATEK that they ignore each other, and the police left.

20. The Plaintiffs have a "NO TRESPASSING" sign in their side yard which faces the Patek property. The "NO TRESPASSING" sign is on a wooden stick which has been placed into the ground. Near the base of the wooden stick, the Plaintiffs have landscaping lights. On or about May 5, 2013, Plaintiff LINH NGUYEN noticed that the "NO TRESPASSING" sign was tilted. She then reviewed a video taken by one of the Nguyen's video cameras and saw that Defendant JOHN PATEK had intentionally pushed his power mower into the

sign and into one or more of the landscaping lights.  Plaintiff LINH NGUYEN then walked over to the landscaping lights and saw that the plastic base of one of the landscaping lights had been broken.  Plaintiff LINH NGUYEN called the police who responded to her home.  She showed the responding police officer the video.  The police officer then went next door to the Patek residence and advised Defendant JOHN PATEK of what he had seen on the video.  Defendant JOHN PATEK became extremely upset and angry and kept repeating, "I'm sick of this shit."  Defendant JOHN PATEK then replaced the broken plastic base of the Nguyen's landscaping light with one of his own, and the police left.  After the police left, Defendant MARY ALICE STROUD PATEK yelled at Plaintiff LINH NGUYEN: "Fuck you.  Go back where you came from."  A short time later, Plaintiff DUNG NGUYEN arrived home, and Defendant MARY ALICE STROUD PATEK told him that same thing.

21.  The driveway on the Nguyen property is near the property line between the Nguyen property and the Patek property.  On the Pateks' side of the property line is a concrete patio.  On or about May 7, 2013, when Plaintiff DUNG NGUYEN was taking food out to his car, he saw workers drilling holes into the Pateks' concrete patio.  Plaintiff DUNG NGUYEN exchanged greetings with one of the workers and asked him what they were doing.  The worker responded that they were from Permaseal.  Plaintiff DUNG NGUYEN told the worker that the Nguyens get water in their basement, and Plaintiff DUNG NGUYEN asked the worker if a permit was required for the work.  The worker said that no permit was required.  Defendant GARRICK J. STROUD came

running out of the house and said to Plaintiff DUNG NGUYEN words to this effect: "What the hell—you want to fight?" Plaintiff DUNG NGUYEN ignored Defendant GARRICK J. STROUD. Defendant MARY ALICE STROUD PATEK then called the police and falsely told them that Plaintiff DUNG NGUYEN was yelling at her son. Defendants MARY ALICE STROUD PATEK and GARRICK J. STROUD requested the police to charge Plaintiff DUNG NGUYEN with disorderly conduct, and the police did so. The incident had been caught on video from a video camera of the Nguyens. The Nguyens showed the police the video and then the police withdrew the charge of disorderly conduct.

22. On or about May 26, 2013, Plaintiff LINH NGUYEN was trimming branches of an evergreen tree. The trunk of the tree was on the Patek property, but the branches which Plaintiff LINH NGUYEN were trimming extended over the Nguyen property, and Plaintiff LINH NGUYEN was trimming the branches only over the Nguyen property. Defendant JOHN PATEK called the City of Countryside police and falsely reported that Plaintiff LINH NGUYEN was cutting down the Patek's Christmas tree in their front yard. The police questioned Plaintiff LINH NGUYEN, but no charges were brought when the police determined that she had trimmed the branches only where they extended over the Nguyen property.

23. On or about July 20, 2013, there were three motor vehicles parked in the Plaintiffs' driveway. To rearrange the order of the motor vehicles in the driveway, the Plaintiffs, along with My Dung Nguyen, backed the three motor vehicles out onto Eighth Avenue and then pulled them back, in a different

order, into the driveway. Defendant JOHN PATEK called the City of Countryside Police Department and falsely accused the Plaintiffs of backing one of their cars into a car owned by Defendant JOHN PATEK's daughter which had been parked on the street. The police came out and questioned Plaintiffs about the incident. The police were unable to find on the motor vehicles involved any evidence or indication that there had been contact between the vehicles, and no charges were brought.

24. During the period from July of 2012 through the late fall of 2013, when Lisa Nguyen returned home from school, Defendant MARY ALICE STROUD PATEK, sang a song at her, the lyrics of which were to this effect, "The ugly people. We don't know where they come from. They come from the dirt. They come from the soot." This occurrence was a frequent occurrence.

25. From before July, 2012, through the late fall of 2013, when one or more of the Plaintiffs and Lisa Nguyen were outside, Defendant MARY ALICE STROUD PATEK, while looking at them, often placed her fingers at the corner of her eyes and pulled the corners of her eyes up so that her eyes were slanted.

26. The above list of incidents does not include all of the incidents of harassment on the part of the Defendants toward the Plaintiffs.

27. The incidents of harassment of the Nguyens by the Defendants were undertaken by the Defendants because of the Nguyens are of the Asian race.

28. As a result of the incidents of harassment recounted above, the Plaintiffs and the others who live in the Nguyen residence have been unable to enjoy their property as they otherwise would have. They often stay inside to

avoid confrontation and harassment by the Defendants. Because of the harassment, they are unable to invite friends over to their house for outdoor activities.

29. The Plaintiffs reasonably fear that the Defendants will continue with this harassment if not enjoined from doing so by this Court.

WHEREFORE, the Plaintiffs, LINH NGUYEN and DUNG NGUYEN, pray that this Court:

(a) Award the Plaintiffs compensatory damages in an amount to be determined by the jury;

(b) Award the Plaintiffs and assess against the Defendants, and each of them, punitive damages in an amount to be determined by the jury;

(c) Enjoin the Defendants and each of them from further acts of harassment;

(d) Award the Plaintiffs their reasonable attorney's fees pursuant to 42 U.S.C. §1988;

(e) Award the Plaintiffs their litigation costs pursuant to Fed.R.Civ.P. 54; and

(f) Grant the Plaintiffs such other and further relief as the nature of the case may warrant and permit.

(Count II—42 U.S.C. §3604 and §3617)

NOW COME the Plaintiffs, DUNG NGUYEN and LINH NGUYEN, by and through their attorney, JOANIE RAE WIMMER, and, complaining of the Defendants, MARY ALICE STROUD PATEK, JOHN PATEK, and GARRICK J.

STROUD, allege and state as follows:

1. The Plaintiffs, DUNG NGUYEN and LINH NGUYEN, have brought this action to redress the violation of their rights under 42 U.S.C. §3604 and §3617.

2. Jurisdiction over this action has been conferred upon this Court under 28 U.S.C. §1331 (federal question).

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because all Defendants reside in the State of Illinois and at least one of the Defendants resides in the Northern District of Illinois, and because all of the events and omissions giving rise to this claim occurred in the Northern District of Illinois.

4. Plaintiff DUNG NGUYEN is an individual who is a naturalized United States citizen who was born in Vietnam and is of the Asian race.

5. Plaintiff LINH NGUYEN is an individual who is a naturalized United States citizen who was born in Vietnam and is of the Asian race.

6. Plaintiffs DUNG NGUYEN and LINH NGUYEN are brother and sister.

7. In and around 1999 Plaintiffs DUNG NGUYEN and LINH NGUYEN purchased a single family residence in Countryside, Illinois, which is commonly known as 5433 South Eighth Avenue, Countryside, Illinois 60525 (hereinafter referred to as "the Nguyen residence"). (The real property on which the Nguyen residence is located will be referred to hereinafter as "the Nguyen property".) Since the Plaintiffs purchased said residence, they have resided there with the Plaintiffs' mother, Sen Vo, the Plaintiffs' sister, My Dung Nguyen, and My Dung Nguyen's daughter, Lisa Nguyen.

8. Defendant MARY ALICE STROUD PATEK is an individual of the Caucasian race.

9. Defendant JOHN PATEK is an individual of the Caucasian race.

10. Defendant GARRICK J. STROUD is an individual of the Caucasian race.

11. Defendants MARY ALICE STROUD PATEK and JOHN PATEK are wife and husband.

12. Defendant GARRICK J. STROUD is the son of Defendant MARY ALICE STROUD PATEK.

13. Defendants MARY ALICE STROUD PATEK, JOHN PATEK, and GARRICK J. PATEK, reside in a single family residence at 5431 South Eighth Avenue, Countryside, Illinois 60525 (hereinafter referred to as "the Patek residence"). (The real property on which the Patek residence is located will be referred to hereinafter as "the Patek property".)

14. The Nguyen residence and the Patek residence are next door to each other.

15. The Defendants, and each of them, have embarked on a course of action of harassing the Plaintiffs, and each of them, and others who reside in the Nguyen residence, with the goal of intimidating them in the use or occupancy of their property on account of their race.

16. Said course of action includes, but is not limited to, those actions described in the paragraphs below.

17. On or about March 3, 2012, Plaintiff LINH NGUYEN noticed that one

of her metal "Private Property" signs on the Nguyen property had been broken. She reviewed a video and saw that the night before Defendant GARRICK J. STROUD had arrived home in the early morning hours with an unknown individual. The video showed that Defendant GARRICK J. STROUD pointed toward the "Private Property" sign and the unknown individual then broke it.

18. On or about July 14, 2012, Plaintiffs DUNG NGUYEN and LINH NGUYEN were outside their residence fixing a video camera attached to their house. Defendant JOHN PATEK approached the Plaintiffs and said, "What the hell are you doing?" Plaintiff DUNG NGUYEN responded, "None of your business." Defendant JOHN PATEK then yelled at the Plaintiffs, "I'll fuck your ass up." Defendant JOHN PATEK then challenged Plaintiff DUNG NGUYEN to a fight. The Plaintiffs then went inside their house and called the police. The police responded, interviewed the parties, and told them to stay away from each other.

19. On or about July 28, 2012, Plaintiff LINH NGUYEN was in her side yard working on the Nguyen's garden. While she was working, Defendant JOHN PATEK yelled "Fuck you" at Plaintiff LINH NGUYEN repeatedly and angrily stared at her. Plaintiff LINH NGUYEN then turned on the car stereo in her car in the Nguyen driveway. Plaintiff JOHN PATEK then called the police and complained about the loud car stereo. Plaintiff LINH NGUYEN was questioned by the police. She agreed to turn off the car stereo. When the police were on the scene, Defendant JOHN PATEK continued to stare in an intimidating and angry way at Plaintiff LINH NGUYEN. The police suggested to

both Plaintiff LINH NGUYEN and Defendant JOHN PATEK that they ignore each other, and the police left.

20. The Plaintiffs have a "NO TRESPASSING" sign in their side yard which faces the Patek property. The "NO TRESPASSING" sign is on a wooden stick which has been placed into the ground. Near the base of the wooden stick, the Plaintiffs have landscaping lights. On or about May 5, 2013, Plaintiff LINH NGUYEN noticed that the "NO TRESPASSING" sign was tilted. She then reviewed a video taken by one of the Nguyen's video cameras and saw that Defendant JOHN PATEK had intentionally pushed his power mower into the sign and into one or more of the landscaping lights. Plaintiff LINH NGUYEN then walked over to the landscaping lights and saw that the plastic base of one of the landscaping lights had been broken. Plaintiff LINH NGUYEN called the police who responded to her home. She showed the responding police officer the video. The police officer then went next door to the Patek residence and advised Defendant JOHN PATEK of what he had seen on the video. Defendant JOHN PATEK became extremely upset and angry and kept repeating, "I'm sick of this shit." Defendant JOHN PATEK then replaced the broken plastic base of the Nguyen's landscaping light with one of his own, and the police left. After the police left, Defendant MARY ALICE STROUD PATEK yelled at Plaintiff LINH NGUYEN: "Fuck you. Go back where you came from." A short time later, Plaintiff DUNG NGUYEN arrived home, and Defendant MARY ALICE STROUD PATEK told him that same thing.

21. The driveway on the Nguyen property is near the property line

between the Nguyen property and the Patek property.  On the Pateks' side of the property line is a concrete patio.  On or about May 7, 2013, when Plaintiff DUNG NGUYEN was taking food out to his car, he saw workers drilling holes into the Pateks' concrete patio.  Plaintiff DUNG NGUYEN exchanged greetings with one of the workers and asked him what they were doing.  The worker responded that they were from Permaseal.  Plaintiff DUNG NGUYEN told the worker that the Nguyens get water in their basement, and Plaintiff DUNG NGUYEN asked the worker if a permit was required for the work.  The worker said that no permit was required.  Defendant GARRICK J. STROUD came running out of the house and said to Plaintiff DUNG NGUYEN words to this effect: "What the hell—you want to fight?"  Plaintiff DUNG NGUYEN ignored Defendant GARRICK J. STROUD.  Defendant MARY ALICE STROUD PATEK then called the police and falsely told them that Plaintiff DUNG NGUYEN was yelling at her son.  Defendants MARY ALICE STROUD PATEK and GARRICK J. STROUD requested the police to charge Plaintiff DUNG NGUYEN with disorderly conduct, and the police did so.  The incident had been caught on video from a video camera of the Nguyens.  The Nguyens showed the police the video and then the police withdrew the charge of disorderly conduct.

22.  On or about May 26, 2013, Plaintiff LINH NGUYEN was trimming branches of an evergreen tree.  The trunk of the tree was on the Patek property, but the branches which Plaintiff LINH NGUYEN were trimming extended over the Nguyen property, and Plaintiff LINH NGUYEN was trimming the branches only over the Nguyen property.  Defendant JOHN PATEK called the City of

Countryside police and falsely reported that Plaintiff LINH NGUYEN was cutting down the Patek's Christmas tree in their front yard. The police questioned Plaintiff LINH NGUYEN, but no charges were brought when the police determined that she had trimmed the branches only where they extended over the Nguyen property.

23. On or about July 20, 2013, there were three motor vehicles parked in the Plaintiffs' driveway. To rearrange the order of the motor vehicles in the driveway, the Plaintiffs, along with My Dung Nguyen, backed the three motor vehicles out onto Eighth Avenue and then pulled them back, in a different order, into the driveway. Defendant JOHN PATEK called the City of Countryside Police Department and falsely accused the Plaintiffs of backing one of their cars into a car owned by Defendant JOHN PATEK's daughter which had been parked on the street. The police came out and questioned Plaintiffs about the incident. The police were unable to find on the motor vehicles involved any evidence or indication that there had been contact between the vehicles, and no charges were brought.

24. During the period from July of 2012 through the late fall of 2013, when Lisa Nguyen returned home from school, Defendant MARY ALICE STROUD PATEK, sang a song at her, the lyrics of which were to this effect, "The ugly people. We don't know where they come from. They come from the dirt. They come from the soot." This occurrence was a frequent occurrence.

25. From before July, 2012, through the late fall of 2013, when one or more of the Plaintiffs and Lisa Nguyen were outside, Defendant MARY ALICE

STROUD PATEK, while looking at them, often placed her fingers at the corner of her eyes and pulled the corners of her eyes up so that her eyes were slanted.

26. The above list of incidents does not include all of the incidents of harassment on the part of the Defendants toward the Plaintiffs.

27. The incidents of harassment of the Nguyens by the Defendants were undertaken by the Defendants because of the Nguyens are of the Asian race.

28. As a result of the incidents of harassment recounted above, the Plaintiffs and the others who live in the Nguyen residence have been unable to enjoy their property as they otherwise would have. They often stay inside to avoid confrontation and harassment by the Defendants. Because of the harassment, they are unable to invite friends over to their house for outdoor activities.

29. The Plaintiffs reasonably fear that the Defendants will continue with this harassment if not enjoined from doing so by this Court.

WHEREFORE, the Plaintiffs, LINH NGUYEN and DUNG NGUYEN, pray that this Court:

(a) Award the Plaintiffs compensatory damages in an amount to be determined by the jury;

(b) Award the Plaintiffs and assess against the Defendants, and each of them, punitive damages in an amount to be determined by the jury;

(c) Enjoin the Defendants and each of them from further acts of harassment;

(d) Award the Plaintiffs their reasonable attorney's fees.

(e)  Award the Plaintiffs their litigation costs pursuant to Fed.R.Civ.P. 54; and

(f)  Grant the Plaintiffs such other and further relief as the nature of the case may warrant and permit.

## JURY DEMAND

The Plaintiffs, and each of them, demand trial by jury on all counts of this Complaint.

LINH NGUYEN<br>
DUNG NGUYEN

By:  _____/s/ Joanie Rae Wimmer_____
         Attorney for the Plaintiffs

JOANIE RAE WIMMER
Attorney at Law
928 Warren Avenue
Downers Grove, Illinois  60515
(630) 810-0005
Attorney No. 3125600