UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DUNG NGUYEN and LINH NGUYEN, | ) | |
| | ) | |
| Plaintiffs, | ) | 14 C 1503 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| MARY ALICE STROUD PATEK, JOHN PATEK, and GARRICK J. STROUD, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Dung Nguyen and Linh Nguyen sued their neighbors, Mary Alice Stroud Patek, John Patek, and Garrick Stroud, alleging violations of 42 U.S.C. § 1982 and the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq*. Doc. 20. Defendants have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint. Doc. 24. The motion is denied.

**Background**

In considering the motion to dismiss, the court assumes the truth of the complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," as well as additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The facts are set forth as favorably to Plaintiffs as permitted by these materials; by stating these facts at the pleading stage, the court does not vouch for their truth. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012); *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011).

Plaintiffs and Defendants are next-door neighbors in Countryside, Illinois. Doc. 20 at pp. 2-3, ¶¶ 7, 14. Plaintiffs, who were born in Vietnam and are Asian, and Defendants, who are Caucasian, have been at odds since 2012. *Id*. at pp. 2-3, ¶¶ 4-10, 18. For ease of reference, the parties will be referred to by their first names.

On March 3, 2012, a companion of Garrick's broke Plaintiffs' "Private Property" sign. *Id*. at p. 3, ¶ 18. Four months later, Plaintiffs were loading their car when Mary Alice opened her door, exposed her bra, and yelled, "Vietnam killed Americans!" while John and Garrick stood by. *Id*. at p. 4, ¶ 19. On July 14, 2012, when Plaintiffs were repairing their home security camera, John approached Plaintiffs, asked "What the hell are you doing?" and yelled, "I'll fuck your ass up" before challenging Dung to a fight. *Id*. at p. 4, ¶ 20. Plaintiffs called the police, who recommended that the families stay away from each other. *Ibid*.

Two weeks later, Linh was gardening when John began staring at her and yelling "Fuck you" repeatedly. *Id*. at p. 4, ¶ 21. Linh turned on her car stereo, John called the police to complain about the noise, the police arrived, and John looked on angrily as Linh turned off the stereo. *Ibid*. The police again recommended that the families ignore each other. *Ibid*.

In early May 2013, Plaintiffs noticed that their "No Trespassing" sign was tilted and that one of its lights was broken. *Id*. at p. 5, ¶ 22. Plaintiffs reviewed a security video showing John pushing his lawn mower into the sign, and Linh called the police and played the video for them. *Ibid*. After the police approached him about the incident and told him about the video, John became angry, began repeating "I'm sick of this shit," and replaced the broken light. *Ibid*. After the police left, John and Garrick looked on as Mary Alice yelled "Fuck you,' and "Go back where you came from" at Linh; Mary Alice later conveyed the same sentiments to Dung, again in John's and Garrick's presence. *Ibid*.

Two days later, Dung approached construction workers on Defendants' patio to ask what they were doing and whether the work required a permit. *Id*. at p. 6, ¶ 23. Garrick ran outside and said, "What the hell—you want to fight?" *Ibid*. Mary Alice called the police, told them that Dung was yelling at Garrick, and Garrick and Mary Alice asked the police to charge Dung with disorderly conduct. *Ibid*. The police declined after seeing video of the incident captured by one of Plaintiffs' cameras. *Ibid*.

A few weeks later, Linh was trimming tree branches that hung over her property from a tree growing on Defendants' property. *Id*. pp. 6-7, at ¶ 24. John called the police and reported that Linh was cutting down the tree. *Ibid*. The police did not charge Linh, having found that she was only trimming branches on her property. *Ibid*. The police returned again on July 20, 2013, in response to John's complaint that Plaintiffs had backed one of their cars into John's daughter's car. *Id*. at p. 7, ¶ 25. The police could not find evidence of any contact between the cars. *Ibid*.

Between July 2012 and Fall 2013, Mary Alice frequently sang a song to Plaintiffs' niece when she returned from school. *Id*. at p. 2, ¶ 7, pp. 7-8, ¶ 26. The song's lyrics included: "The ugly people. We don't know where they come from. They come from the dirt. They come from the soot." *Id*. at pp. 7-8, ¶ 26. Mary Alice also sang that song to Plaintiffs when they were outside during warm weather in 2012 and 2013. *Id*. at p. 8, ¶¶ 27-28. John and Garrick were often present when Mary Alice sang. *Ibid*. In addition, Mary Alice often looked at Plaintiffs and pulled the corner of her eyes so that they were slanted. *Id*. at p. 8, ¶ 29. Plaintiffs and the family members who live with them often stayed inside and avoided hosting friends outside because of the harassment by and frequent confrontations with Defendants. *Id*. at p. 9, ¶ 32. And Plaintiff have suffered embarrassment, humiliation, and mental pain and suffering as a result of Defendants' conduct. *Id*. at p. 9, ¶ 34.

**Discussion**

To survive a Rule 12(b)(6) motion, a complaint "must contain 'enough facts to state a claim to relief that is plausible on its face' and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ibid.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Seventh Circuit has made clear that neither *Twombly* nor *Iqbal* "cast doubt on the validity of Rule 8 of the Federal Rules of Civil Procedure," *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010), which provides in relevant part that "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

**I.   Section 1982 Claim**

Section 1982 provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. To state a viable § 1982 claim, a plaintiff must allege: "(1) membership in a protected class; (2) discriminatory intent on the part of the defendant[;] and (3) interference with the rights or benefits connected with the ownership of property." *Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004); *see also Southend Neighborhood Improvement Ass'n v. St. Clair Cnty.*, 743 F.2d 1207, 1211 (7th Cir. 1984); *Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845, 850 (N.D. Ill. 2003).

The complaint satisfactorily pleads all three elements of a § 1982 claim. Although allegations of isolated acts of discrimination are not enough to state a § 1982 claim, *see Sheikh v.*

*Rabin*, 565 F. App'x 512, 517-19 (7th Cir. 2014), the complaint alleges a pattern of racial harassment over the course of nearly two years. Specifically, the complaint alleges that Defendants had animus towards Plaintiffs because of their Asian heritage, Doc. 20 at p. 4, ¶ 19, p. 5, ¶ 22, pp. 7-8, ¶¶ 26-29, p. 9, ¶ 31; that Defendants harassed Plaintiffs because of their race, *id*. at p. 9, ¶ 31; and that the harassment impinged Plaintiffs' use and enjoyment of their property, *id*. at p. 9, ¶¶ 32, 34. That is enough for a § 1982 claim to survive a Rule 12(b)(6) motion. *See James v. Vill. of Willowbrook*, 2012 WL 3017889, at *12 (N.D. Ill. July 19, 2012) ("[A]llegations of harassment of a homeowner with the intent to deprive him of the right to use his property because of race are sufficient to state a claim under § 1982.").

Defendants argue that the § 1982 claim should be dismissed because "this is simply a quarrel between neighbors that has gotten out of control," that "the allegations amount to no more than an off-the-cuff reference to the plaintiffs' race," and that Plaintiffs have not "allege[ed] facts supporting the inference that the defendants acted because of their race." Doc. 28 at 2, 6. The argument is without merit. When viewed in the light most favorable to Plaintiffs, the complaint plausibly alleges that Defendants' actions were persistent and arose from racial animus. This is particularly true of Mary Alice, whose alleged conduct was overtly racial—she yelled "Vietnam killed Americans" and "Go back where you came from," sang a song about Plaintiffs coming from "the dirt" and "the soot," and pulled her eyes so that they appeared slanted. Doc. 20 at p. 4, ¶ 19, p. 5, ¶ 22, p. 8 at ¶¶ 27-29.

It is true that John and Garrick are not alleged to have made overtly racist comments. However, because they are related to and live with Mary Alice, because they witnessed but did not intervene in many of her confrontations with Plaintiffs, and because they had plenty of their own run-ins with Plaintiffs, it is plausible that they shared Mary Alice's alleged racial animus

towards Plaintiffs. Although the facts adduced in discovery or at trial may tell a different story, the complaint's allegations as to John and Garrick are sufficient to survive a Rule 12(b)(6) dismissal in a straightforward discrimination case like this one. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) ("A complaint alleging sex discrimination under Title VII need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex.") (internal quotation marks omitted); *Swanson*, 614 F.3d at 404-05 ("A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what 'really' went on in this plaintiff's case.").

## II. Fair Housing Act Claim

The FHA prohibits discrimination against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The FHA also makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. The FHA governs conduct regardless of whether it occurs before or after a tenant or owner has acquired a property interest in a dwelling. *See Bloch v. Frischholz*, 587 F.3d 771, 780-82 (7th Cir. 2009) (en banc). "Interference is more than a quarrel among neighbors or an isolated act of discrimination, but rather is a pattern of harassment, invidiously motivated." *Id.* at 783 (internal quotation marks omitted).

To survive a motion to dismiss, an FHA claim must allege discrimination related to the terms, conditions, privileges, or provisions of services of a dwelling. *See Mehta v. Beaconridge Improvement Ass'n*, 432 F. App'x 614, 616 (7th Cir. 2011); *Bloch*, 587 F.3d at 776. An FHA claim must also plead the type of discrimination that occurred, by whom, and when. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011); *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011); *Swanson*, 614 F.3d at 405. Here, the complaint alleges the type of discrimination that occurred (race or national origin), by whom (Mary Alice, John, and Garrick), and when (March 2012 through late 2013). Doc. 20 at pp. 12-18, ¶¶ 18, 29-34. These allegations are sufficient to survive a Rule 12(b)(6) motion. *See Swanson*, 614 F.3d at 405 ("Swanson's complaint identifies the type of discrimination that she thinks occurs (racial), by whom (Citibank, through Sketrich, the manager, and the outside appraisers it used), and when (in connection with her effort in early 2009 to obtain a home-equity loan). This is all that she needed to put in the complaint.").

Defendants contend that the FHA claim should be dismissed because neither the FHA's "text nor legislative history indicates an intent to make quarrels between neighbors a routine basis for federal litigation" and because a plaintiff "cannot sue under § 3604 for isolated acts of discrimination by other private property owners." Doc. 28 at 20. But as noted above, the complaint alleges not isolated acts, but a persistent course of racially-motivated harassment over nearly two years. Defendants also argue that the complaint's allegations "fail to even suggest that the defendants had an intent to discriminate against the plaintiffs based on their race, religion, or national origin." Doc. 28 at 21. Defendants again are incorrect for the reasons given above. The complaint's allegations sufficiently plead an FHA claim.

Finally, Defendants suggest that certain paragraphs of the complaint violate Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). It surely would have been possible for Plaintiffs to break up those paragraphs into smaller chunks, but their length does not violate Rule 8(d)(1), let alone warrant dismissal of the complaint. *See Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) ("[I]f the trial court understood the allegations sufficiently to determine that they could state a claim for relief, the complaint has satisfied Rule 8, and dismissal based on the inclusion of superfluous material is inappropriate.") (internal quotation marks omitted).

## Conclusion

For these reasons, Defendants' motion to dismiss is denied. Defendants shall answer the amended complaint by November 6, 2014.

October 16, 2014

United States District Judge